UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NSJ Investors, LLC,

Plaintiff,

v.

TH/North San Jose, LLC,
Citicorp North America, Inc.,
Louis S. Caiola, Louis Cortese,
and Tishman/Heskin Partners,

Defendants.

Civ. File No. 01-1932 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on a Motion to Dismiss or, in the alternative, for Summary Judgment filed by Defendants Louis Caiola and Louis Cortese. For the reasons that follow, the Motion is denied.

**BACKGROUND**

In October 2001, this Court granted the motion of Plaintiff NSJ Investors, LLC ("NSJ") for an interpleader of certain disputed sums of money. The order granting the interpleader also enjoined any of the parties from instituting litigation involving the money in any other forum. Two of the Defendants now contend that interpleader was inappropriate and that the case must be dismissed.

NSJ is a limited-liability company formed by several investors to purchase, develop, lease, and eventually re-sell commercial property in and near San Jose, California. The investors (also called "Members") in the company include Mr. Caiola and Mr. Cortese,

FEB 22 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Citicorp North America, and the developers of the property, TH/North San Jose ("TH/North") and Tishman/Heskin Partners. In the LLC Agreement for NSJ, TH/North was designated as the Managing Member of the company.

In 1997, NSJ purchased two pieces of commercial property; one was sold in early 2001 for a substantial profit.[1] The other is subject to a long-term lease and, because of the downturn in the real estate market in San Jose, likely cannot be sold without incurring a loss.

After the first property was sold in early 2001, a dispute arose between the Members as to how the proceeds from the long-term lease on the other property should be distributed among the Members. Caiola and Cortese assert that the LLC Agreement mandates that the rent proceeds be distributed according to each Member's percentage interest in NSJ. TH/North and Tishman/Heskin Partners contend that the proceeds should be distributed according to each Member's residual percentage interest in NSJ. The difference between each member's percentage interest and residual percentage interest is striking. For example, Caiola's percentage interest is 72%, but his residual percentage interest is only slightly more than 36%. TH/North's percentage interest is 1%, but its residual percentage interest is 27.5%.

---

[1] The total original investment for the purchase of both properties was just over $6 million. The selling price of the property sold in 2001 was $20.7 million.

NSJ brought this lawsuit, seeking to deposit into the Court the disputed funds. Caiola and Cortese now contend that the lawsuit was brought in bad faith and that NSJ had no authority to bring the lawsuit under the terms of the LLC Agreement, mandating a dismissal.

**DISCUSSION**

For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to NSJ. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**A. Bad Faith/Identity of Interests**

Caiola and Cortese argue that this interpleader action should be dismissed because NSJ is not in danger of being subjected to double liability or more than one lawsuit. They contend that because TH/North manages NSJ, the interests of NSJ and TH/North are one and the same, such that there is no possibility that TH/North would sue NSJ over the distribution of the fund. They also claim that TH/North caused NSJ to bring this lawsuit in bad faith, merely to press TH/North's invalid interpretation of the LLC Agreement and to force Caiola and Cortese to litigate in a distant forum.

The interpleader statute, 28 U.S.C. § 1335, is intended to protect a stakeholder both from double liability and from double litigation. See Underwriters at Lloyd's v. Nichols, 363 F.2d 357, 365 (8th Cir. 1966). An interpleader action is improper when the stakeholder has no legitimate fear of double liability or double litigation. For instance, courts have dismissed interpleaders where individuals controlling the stakeholder deliberately created competing claims solely to invoke the jurisdiction of a preferred forum. See Indianapolis Colts v. Mayor & City Council of Baltimore, 733 F.2d 484, 486-87 (7th Cir. 1984).

In this case, it does not appear that TH/North is raising a fictitious claim or is merely attempting to invoke the jurisdiction of this Court through the deliberate creation of competing claims. There is a legitimate dispute here as to how the money should be distributed. This is precisely the situation the interpleader statute was designed to address. Moreover, although TH/North is the manager of NSJ, it is certainly possible for TH/North's interests to be adverse to, or at least not coincidental with, NSJ's interests. Indeed, it appears that the instant litigation presents exactly this situation. The lawsuit will not be dismissed on this ground.

**B. Terms of the Agreement**

Caiola and Cortese contend that two provisions of the LLC Agreement prevented NSJ from bringing this lawsuit, and that, because NSJ did not have authority to bring the lawsuit, it should be dismissed.

Section 7.4 of the LLC Agreement provides that

> (a) The approval of the Majority Non-Managing Members shall be required for each of the following actions:
>
> * * *
>
> (xiv) The commencement of any litigation other than in the ordinary course of business, or the filing of a voluntary petition in bankruptcy by the Company; [and]
>
> * * *
>
> (xxiii) The employment or termination of any accountant or counsel to the Company . . . .

(Cunningham Aff. Ex. A at 20-22.) The Agreement defines "Majority Non-Managing Members" to mean those non-managing members holding at least 84% of the percentage interest of NSJ. (Id. Ex. B.) Because Caiola alone holds 72% of the percentage interest, Caiola and Cortese argue that NSJ was not authorized to commence the litigation or to hire a lawyer to commence the litigation without Caiola's approval, which was not sought or given.

NSJ contends that this litigation is "in the ordinary course of business" and that therefore there was no need to secure the approval of the majority non-managing members. According to NSJ, one of its responsibilities is distributing profits to the members. Because this lawsuit will enable NSJ to distribute the profits in accordance with the terms of the LLC Agreement, NSJ asserts that the lawsuit is in the ordinary course of business.

The Court agrees with NSJ. Caiola and Cortese accuse TH/North of manipulating NSJ into this lawsuit in order to ensure that TH/North's interpretation of the LLC Agreement

is correct. However, reading the LLC Agreement to allow Caiola what would amount to veto power over an interpleader action such as this gives Caiola the power to force his interpretation of the LLC Agreement. Moreover, under the LLC Agreement, NSJ is charged with conducting the affairs of the company and is not required to seek the approval of the non-managing members for the decisions necessary to perform its duties. The distribution of profits is undoubtedly one of the most important functions of this company, and this lawsuit is a natural outgrowth of NSJ's distribution responsibilities.

NSJ did not respond to Defendants' contention that the attorney-hiring clause also precludes NSJ from bringing this interpleader action. At first blush, the language of the clause does appear to preclude this lawsuit: the hiring of an attorney for the company requires approval of a majority of non-managing members. (Cunningham Aff. Ex. A at 20-22.) There is no dispute that NSJ did not seek or receive the approval of Caiola prior to hiring the attorneys who instituted this lawsuit.

However, if the LLC Agreement gives NSJ the power to perform its ordinary-course-of-business duties without securing approval of the non-managing members and if instituting this lawsuit falls within NSJ's ordinary-course duties, then reading the attorney-hiring clause to effectively prohibit NSJ from performing its ordinary-course duties is contrary to the intent of the LLC Agreement. Thus, because this lawsuit is within the ordinary course of NSJ's business, approval of the non-managing members was not necessary to hire a lawyer to prosecute this action, and NSJ's actions do not violate the terms of the LLC Agreement.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Clerk Doc. No. 14) is **DENIED**.

Dated: February 22, 2002

Paul A. Magnuson
United States District Court Judge